**<u>Exhibit B</u>**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re | ) Case No. 20-10332 (JTD) |
| | ) |
| SPINEGUARD, INC.,[1] | ) Chapter 11 |
| | ) |
| Debtor. | ) |
| | ) |

**DISCLOSURE STATEMENT FOR DEBTOR'S CHAPTER 11 PLAN OF**
**REORGANIZATION**

**THIS IS NOT A SOLICITATION FOR THE ACCEPTANCE OR REJECTION OF THE DEBTOR'S CHAPTER 11 PLAN OF REORGANIZATION ("PLAN"). THE DEBTOR MAY NOT SOLICIT ACCEPTANCES OF THE PLAN, AND NO OTHER PARTY MAY SOLICIT ACCEPTANCES OR ENCOURAGE REJECTIONS OF THE PLAN, UNTIL THE BANKRUPTCY COURT HAS APPROVED A DISCLOSURE STATEMENT. THIS DISCLOSURE STATEMENT ("<u>DISCLOSURE STATEMENT</u>") WILL BE SUBMITTED BY THE DEBTOR FOR APPROVAL BY THE COURT, BUT HAS NOT YET BEEN APPROVED BY THE COURT.**

IMPORTANT: THIS DISCLOSURE STATEMENT, WHICH HAS BEEN FILED BY THE DEBTOR, SPINEGUARD, INC., MAY NOT BE RELIED UPON FOR ANY PURPOSE OTHER THAN TO DETERMINE HOW TO VOTE ON THE PLAN, DATED AS OF THE DATE HEREOF, AND NOTHING CONTAINED HEREIN WILL CONSTITUTE AN ADMISSION OF ANY FACT OR LIABILITY BY ANY PARTY, OR BE ADMISSIBLE IN ANY PROCEEDING INVOLVING THE DEBTOR OR ANY OTHER PARTY, OR BE DEEMED TO BE ADVICE REGARDING THE TAX OR OTHER LEGAL EFFECTS OF THE PLAN ON HOLDERS OF CLAIMS AGAINST OR INTERESTS IN THE DEBTOR. THE DEBTOR HAS PROVIDED THE INFORMATION THAT IS SET FORTH HEREIN TO ENABLE ITS CREDITORS AND INTEREST HOLDERS TO MAKE AN INFORMED JUDGMENT ABOUT THE PLAN. CREDITORS AND INTEREST HOLDERS SHOULD NOT RELY UPON THIS DISCLOSURE STATEMENT FOR ANY PURPOSE OTHER THAN THE PURPOSE OF MAKING AN INFORMED JUDGMENT

---

[1] The last four digits of the Debtor's federal tax identification number are 3465. The mailing address for the Debtor is 1434 Spruce Street, Suite 100, Boulder, Colorado 80302.

ABOUT THE PLAN.

THIS DISCLOSURE STATEMENT DOES NOT CONTAIN ANY LEGAL, BUSINESS, FINANCIAL, OR TAX ADVICE.  ANY PERSON OR ENTITY THAT NEEDS SUCH ADVICE IN ORDER TO MAKE A JUDGMENT ABOUT THE PLAN SHOULD CONSULT HIS, HER, OR ITS OWN ATTORNEYS, ACCOUNTANTS, AND/OR ADVISORS.

MANAGEMENT OF THE DEBTOR HAS PROVIDED ALL OF THE INFORMATION SET FORTH IN THIS DISCLOSURE STATEMENT, WITH THE EXCEPTION OF THAT INFORMATION FOR WHICH MANAGEMENT HAS IDENTIFIED ANOTHER SOURCE.  THE DEBTOR HAS NOT AUTHORIZED ANY PARTY TO MAKE ANY REPRESENTATIONS ABOUT THE DEBTOR'S BUSINESS AND FINANCIAL AFFAIRS AND/OR ITS PLAN OTHER THAN THOSE REPRESENTATIONS THAT ARE MADE IN THIS DISCLOSURE STATEMENT AND THE ACCOMPANYING DOCUMENTS AND EXHIBITS.

THE DEBTOR HAS BEEN CAREFUL TO MAKE ACCURATE STATEMENTS IN THIS DISCLOSURE STATEMENT WITH RESPECT TO ALL MATTERS.  THE DEBTOR BELIEVES THAT THE CONTENTS OF THIS DISCLOSURE STATEMENT ARE COMPLETE AND ACCURATE IN ALL MATERIAL RESPECTS AND THAT THE PLAN IS IN THE BEST INTERESTS OF THE CREDITORS.  HOWEVER, THE DEBTOR CANNOT AND DOES NOT WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED HEREIN IS WITHOUT INACCURACY.  IT IS ESPECIALLY IMPORTANT THAT ALL HOLDERS OF CLAIMS AND/OR INTERESTS UNDERSTAND THAT FUTURE EVENTS AND CIRCUMSTANCES THAT MAY BE BEYOND THE CONTROL OF THE DEBTOR MAY MATERIALLY ALTER THE FINANCIAL PERFORMANCE AND BUSINESS PROSPECTS OF THE DEBTOR.

**TO ALL PARTIES IN INTEREST:**

On February 13, 2019 (the "Petition Date"), SpineGuard, Inc. ("SpineGuard" or "Debtor") filed a voluntary petition under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"), the Honorable John T. Dorsey presiding. The Chapter 11 case has been designated Case No. 20-10332 (JTD) (the "Chapter 11 Case"). The Debtor is presently acting as a debtor-in-possession in the Chapter 11 Case.

This Disclosure Statement is submitted by Debtor and contains information with respect to the Debtor's proposed Plan which the Debtor has filed simultaneously herewith and has attached hereto as **Exhibit A**.  In the event that there are any inconsistencies between the Plan and the Disclosure Statement, the terms of the Plan shall control.

**The Bankruptcy Court's approval of this Disclosure Statement does not constitute an endorsement by the Court of the proposed Plan.**

# ARTICLE I
# DEFINITIONS

Terms that are employed in this Disclosure Statement and that are not specifically defined herein or in the Bankruptcy Code shall be defined in accordance with the definitions that are contained in the Plan.  In some instances, capitalized terms that are used in the Plan may inadvertently have been used herein in the lower case, particularly the term "Claim."  Use of the lower case in any particular instance is not intended to alter the definition that is set forth in the Plan.

# ARTICLE II
# BACKGROUND

A.    The Debtor has been in business for approximately 11 years.  It is a Delaware corporation that now maintains its home office in Boulder, Colorado.  Until recently, the Debtor was based in San Francisco, California.

B.    The Debtor is a wholly-owned subsidiary of SpineGuard, S.A. ("Parent"), a publicly-traded joint stock company that is based in, and was formed under the laws of, the nation of France.

C.    The Debtor is an importer and distributor of single-use, disposable, dynamic surgical guidance instruments that measure the density of tissue and enable surgeons to drill holes into the spine during spinal fusion surgery, safely and without damaging nerves.  The technology that is employed in these devices is embedded in a number of products ("SG Products") and is protected by a number of patents that are owned by Parent.  To date, SG Products have been used in more than 75,000 surgeries.

D.    Parent manufactures the SG Products and sells those products to the Debtor, which resells them at a profit throughout North America through a network of independent sales agents.

E.    On or about September 10, 2018, Parent entered into an "Investment and Subscription Agreement" ("Subscription Agreement") under which it borrowed €4,500,000 (approximately $4,905,000 at today's exchange rate) to refinance debt and obtain working capital and issued bonds to Norgine Ventures Fund I S.C.A. SICAR ("Norgine") and Harbert European Specialty Lending Company II, S.A.R.L ("Harbert" and, together with Norgine, the "Bondholders" or "Secured Parties"), both of which are incorporated and organized under the laws of the Grand Duchy of Luxembourg.  Under the Subscription Agreement, the Bondholders are represented by Norgine Pharma, S.A. ("NP"), which is based in Dreux, France.

F.    All of the proceeds of the Subscription Agreement were used by Parent to repay existing, Parent company, debt and for working capital purposes at the Parent company level.

G.      Under a September 26, 2018 Guarantee and Security Agreement ("Guarantee"), the Debtor guaranteed all of Parent's debt under the Subscription Agreement and granted the Bondholders/Secured Parties a security interest in all, or substantially all, of its assets, including but not limited to its cash bank accounts, to secure the Guarantee.

H.      As of January 31, 2020, principal and interest owed to the Bondholders under the Subscription Agreement equaled €4,150,966 (or approximately $4,524,553).

I.      On or about February 5, 2020, Parent initiated a "Safeguard Proceeding," which is, in some respects, the French equivalent of a chapter 11 case, in the Commercial Court of Creteil, in France.

J.      The Parent's decision to initiate the Safeguard Proceeding was driven by the need for relief from the steep principal amortization requirements of the Subscription Agreement, which amortization requirements had then become operative.  The Safeguard Proceeding has since been concluded on the basis of a settlement between the Parent and the Bondholders.  That settlement is embodied in the Plan of Reorganization in this Chapter 11 Case.

## ARTICLE III
## THE COMMENCEMENT OF THE CHAPTER 11 CASE;
## SIGNIFICANT EVENTS IN THE CHAPTER 11 CASE

A.      On February 13, 2020, the Debtor commenced the Chapter 11 Case.

B.      SpineGuard continues to operate its business as a debtor in possession. No committee of unsecured creditors or chapter 11 trustee has been appointed in the Chapter 11 Case.

C.      At the outset of the case, the Debtor and the Bondholders agreed to a consensual use of cash collateral, which agreement has been renewed and extended from time to time since the Petition Date with approval of the Court.

D.      The Parent, Spineguard, and the Bondholders have been in negotiations regarding a debt restructuring for much of the time between the Petition Date and the filing of this Disclosure Statement.  Those negotiations have resulted in a settlement that is embodied in the Debtor's Plan.

E.      On June 16, 2021, the Debtor filed the Plan and this accompanying Disclosure Statement.  A true and correct copy of the Plan is attached hereto as **Exhibit A**.

DOCS_DE:234962.1 80693/001

**ARTICLE IV**
**CLASSIFICATION AND TREATMENT OF LIABILITIES AND EQUITY INTERESTS OF**
**THE DEBTOR UNDER THE PLAN OF REORGANIZATION**

A.      Classification

Pursuant to this Plan and in accordance with section 1123(a)(1) of the Bankruptcy Code, all Claims of Creditors and all Equity Interests are placed in the following Classes:

Unclassified Claims.  Administrative Expense Claims and Priority Tax Claims.

Class 1.  The Secured Claims of the Bondholders.

Class 2.  General Unsecured Claims.

Class 3.  The Equity Interest of the Equity Interest Holder.

B.      Unclassified Claims

1.      Administrative Expense Claims.  Pursuant to section 1129(a)(9)(A) of the Bankruptcy Code, each Allowed Administrative Expense Claim, with the exception of each Administrative Expense Claim of a Professional Person, shall be paid in full on or before the Effective Date or pursuant to terms that are otherwise agreed to by the Debtor and the Holder of the subject Claim.  Each Administrative Expense Claim of a Professional Person shall be paid in full within fourteen (14) days after the entry of a Final Order by the Bankruptcy Court allowing the application for compensation and reimbursement of such Professional Person or pursuant to terms that are otherwise agreed to by the Reorganized Debtor and the Holder of such Claim.

2.      Priority Tax Claims.  Pursuant to section 1129(a)(9)(C) of the Bankruptcy Code, each Allowed Priority Tax Claim shall be paid in full on or before the Effective Date or pursuant to terms that are otherwise agreed to by the Debtor and the Holder of such Claim.

C.      Classified Claims and Equity Interests

1.      Class 1.  The Secured Claims of the Bondholders.

The Secured Claim of the Bondholders is impaired under the Plan.  This Claim will be paid in full, together with interest at the non-default, contract rate, in accordance with the amortization schedule that is attached as **Exhibit A** to the Plan.

2.      Class 2.  General Unsecured Claims.

These Claims are not impaired under the Plan.  They will be paid in full on the Effective Date.

3.      Class 3.  The Equity Interests of the Equity Interest Holder.

These interests are not impaired under the Plan.

D.      Impairment of Classes

Pursuant to section 1129(a)(10) of the Bankruptcy Code, if a Class of Claims is impaired under the Plan, at least one Class of Claims that is impaired under the Plan must accept the Plan, without considering the votes of "Insiders" within the meaning of the Bankruptcy Code.  A Claim or Equity Interest is "impaired" under the Plan if the legal, equitable, or contractual rights of the Holder of such Claim or Equity Interest is altered under the Plan.  The term "unimpaired" refers to Classes of Creditors or Holders of Equity Interests whose legal, equitable, and contractual rights remain unaltered by the Plan.  Because of the treatment afforded to such Classes, they are deemed to have accepted the Plan.  It is not necessary to solicit acceptances from the Holders of Claims or Equity Interests in unimpaired Classes.

Class 1 is impaired under the Plan.  The Holders of Claims in Class 1 shall be entitled to vote separately to accept or reject the Plan.  As an impaired Class of Claims, Class 1 shall have accepted the Plan if (a) the Holders of at least two-thirds in dollar amount of the Allowed Claims actually voting in such Class have voted to accept the Plan and (b) the Holders of more than one-half in number of the Allowed Claims actually voting in such Class have voted to accept the Plan.

## ARTICLE V
## FEASIBILITY

Under section 1129(a)(11) of the Bankruptcy Code, in order to enter an order confirming the Plan, the Bankruptcy Court must find that "[c]onfirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan."  This is often referred to as the "feasibility test."  While the Debtor cannot absolutely warrant that the Plan is feasible, and while this Plan, like any other plan of reorganization that is tied to the continued viability and profitability of the debtor, is subject to a number of risk factors (as more fully described in Article VII hereof), based upon its conservative financial projections, the Debtor *strongly believes* that the Plan passes the feasibility test. The Debtor will file and distribute its updated projections within 14 days of the date hereof.

## ARTICLE VI
## LIQUIDATION ANALYSIS

The Bankruptcy Code requires that a creditor with a right to vote either accept the Plan or receive or retain under the Plan on account of that creditor's claim property of a value, as of the effective date of the plan, that is not less than the amount that such holder would so receive or retain if the debtor were liquidated under chapter 7 of the Bankruptcy Code.  This is commonly known as the "Best Interests of Creditors Test."

Under the Plan, all creditors in all classes will be paid in full.  Hence, by definition, such creditors will receive **not less** than they would receive in a chapter 7 case. For this reason a formal "Liquidation Analysis" (which would be highly speculative in any event) is unnecessary in this case.

In the opinion of the Debtor, for this reason, the Plan meets the requisite "Best Interests Of Creditors Test."

## ARTICLE VII
## RISK FACTORS

Distributions to creditors contemplated under the Plan are contingent upon many assumptions, most of which are related to the Debtor's ability to maintain and/or exceed its current state of profitability.  This ability, of course, is subject to many risk factors including but not limited to war, insurrection, pandemic, acts of God, competition from other companies, recession, general economic conditions, etc.

## ARTICLE VIII
## TAX CONSEQUENCES

Implementation of the Plan may result in federal, state and local tax consequences to the Debtor, to its Equity Interest Holder, and to its creditors. Neither rulings from the Internal Revenue Service or any state or local taxing authority, nor tax opinions will be sought or obtained with respect to any consequences of the Plan.

EVERY PARTY POTENTIALLY AFFECTED BY THE PLAN IS STRONGLY ADVISED TO CONSULT WITH THEIR OWN TAX ADVISORS REGARDING THE TAX CONSEQUENCES TO THEM OF THE TRANSACTIONS CONTEMPLATED BY THE PLAN.

## ARTICLE IX

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

A.    Assumption of Executory Contracts and Unexpired Leases

Except for any unexpired leases or executory contracts that the Debtor rejects or designates as being subject to rejection, pursuant to sections 365 and 1123(b) of the Bankruptcy Code, all executory contracts and unexpired leases that existed between the Debtor and another Person as of the Petition Date, including any that are the subject of one or more pending, unresolved motions to assume, and not including any executory contracts and/or unexpired leases that have previously been assumed or rejected pursuant to a Final Order of the Bankruptcy Court, shall be deemed assumed by the Debtor upon entry of the Confirmation Order. The Plan shall constitute a motion to assume such executory contracts and unexpired leases, and the Debtor shall not be subject to any liabilities under such contracts or leases except as provided in the Plan. Subject to the occurrence of the Effective Date, entry of the Confirmation Order by the

Bankruptcy Court shall constitute approval of such assumptions pursuant to section 365(a) of the Bankruptcy Code and a finding by the Bankruptcy Court that each such assumption is in the best interests of the Debtor and the Estate. With respect to each such executory contract or unexpired lease assumed by the Debtor, unless otherwise determined by the Bankruptcy Court pursuant to a Final Order or agreed to by the parties thereto on or before the Effective Date, any defaults of the Debtor with respect to such assumed executory contracts or leases existing as of the Effective Date shall be cured in the ordinary course of the Reorganized Debtor's business promptly after any such default becomes known to the Reorganized Debtor and, if disputed, established pursuant to applicable law by the Bankruptcy Court, and the assumed executory contracts or leases shall be binding upon and enforceable upon the parties thereto. Subject to the occurrence of the Effective Date, upon payment of such cure amount, all defaults of the Debtor existing as of the Confirmation Date with respect to such executory contract or unexpired lease shall be deemed cured.

B.    Rejection

No later than ten (10) days prior to the commencement of the Confirmation Hearing, the Debtor shall file a notice (the "Rejection Notice") with the Bankruptcy Court of any executory contracts or unexpired leases that the Debtor seeks to reject. The Plan shall constitute a motion to reject such executory contracts and unexpired leases that are listed on the Rejection Notice, and entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of such rejection pursuant to section 365 of the Bankruptcy Code and a finding by the Bankruptcy Court that each such rejection is in the best interests of the Debtor, the Estate and all parties in interest in the Chapter 11 Case.

C.    Damages Upon Rejection

The Bankruptcy Court shall determine the dollar amount, if any, of the Claim of any Person seeking damages by reason of the rejection of any executory contract or unexpired lease; provided, however, that such Person must file a proof of claim with the Bankruptcy Court on or before thirty (30) calendar days following the date of entry of the Confirmation Order. To the extent that any such Claim is an Allowed Claim by a Final Order of the Bankruptcy Court, such Claim shall become, and shall be treated for all purposes under the Plan as a Class 2 General Unsecured Claim, and the Holder thereof shall receive distributions as a Holder of an Allowed Claim in such Class pursuant to the Plan.

## ARTICLE X

## CONFIRMATION OF THE PLAN

A.    Hearing on Confirmation.

The Debtor will seek to set a hearing on confirmation of the Plan before the Honorable John T. Dorsey, United States Bankruptcy Judge, or before any other judge

sitting in his stead at the United States Bankruptcy Court for the District of Delaware. The Bankruptcy Court shall confirm the Plan at that hearing only if certain requirements, as set forth in section 1129 of the Bankruptcy Code, are satisfied.

B.      Treatment of Dissenting Classes of Creditors.

The Bankruptcy Code requires the Bankruptcy Court to find that the Plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the Plan.  Upon such a finding, the Bankruptcy Court may confirm the Plan despite the rejection of a dissenting class. The Debtor has requested that the Court confirm the Plan even if creditors holding claims in impaired classes do not accept the Plan.

C.      Effect of Confirmation.

Confirmation of the Plan shall operate on the Effective Date as a discharge of the Debtor from all claims and indebtedness that arose before the Effective Date, except for those unclassified claims that the Reorganized Debtor agrees to pay as a continuing obligation.  All such discharged claims and indebtedness shall be satisfied by the cash payment or other consideration provided under the Plan.  Upon Confirmation, all property of the Debtor's estate shall be free and clear of all claims and interests of creditors, except as otherwise provided in the Plan or the order of the Bankruptcy Court confirming the Plan.  On the Effective Date, the Reorganized Debtor shall be vested with all assets of the Estate.  The provisions of the Plan shall bind the Debtor, the Reorganized Debtor, and all other parties in interest, including any creditor of the Debtor, whether or not such creditor is impaired under the Plan and whether or not such creditor has accepted the Plan.

D.      Consequences of a Failure to Confirm the Plan.

In the event the Court declines to confirm the Plan or the Debtor withdraws the Plan, the Debtor may seek to file one or more amended Plans.  Alternatively, the Chapter 11 Case may be dismissed or converted to a case under Chapter 7 of the Bankruptcy Code.

E.      Modification of the Plan.

The Debtor reserves the right to revoke or withdraw the Plan prior to Confirmation.  If the Plan is revoked or withdrawn, or if confirmation of the Plan does not occur, then the Plan will be deemed null and void in all respects and nothing contained in the Plan will be deemed to prejudice in any manner the rights of the Debtor or any other person or entities in any further proceedings involving the Debtor.

DOCS_DE:234962.1 80693/001

DATED:  June 17, 2020                      Respectfully submitted,

                                           PACHULSKI STANG ZIEHL & JONES LLP

                               By:   */s/ Mary F. Caloway*
                                     _____
                                     Mary F. Caloway (No. 3059)
                                     919 North Market Street
                                     17th Floor
                                     Wilmington, Delaware 19801
                                     Telephone: (302) 778-6464
                                     Facsimile: (302) 652-4400
                                     Email: mcaloway@pszjlaw.com

                                     -and-

                                     HANSON BRIDGETT LLP

                               By: */s/Neal L. Wolf*
                                     _____
                                     Neal L. Wolf (admitted pro hac vice)
                                     Anthony J. Dutra (admitted pro hac vice)
                                     1676 N. California Blvd., Suite 620
                                     Walnut Creek, CA 94596
                                     Telephone:  (925) 764-8460
                                     Facsimile:  (925) 746-8490
                                     Email: nwolf@hansonbridgett.com
                                             adutra@hansonbridgett.com

                                     *Counsel to the Debtor and Debtor in*
                                     *Possession*

DOCS_DE:234962.1 80693/001

**Exhibit A**

1

2

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

3

4

5    In re

6    SPINEGUARD, INC.,[1]

7        Debtor.

8

) Case No. 20-10332 (JTD)
)
) Chapter 11
)
)
)
)

9    <u>**DEBTOR'S CHAPTER 11 PLAN OF REORGANIZATION**</u>

10        SpineGuard, Inc. (the "Debtor"), the debtor and debtor-in-possession in the above-
11    captioned Chapter 11 case, files the following Plan of Reorganization ("Plan") pursuant to
     Chapter 11 of the United States Bankruptcy Code.

12                          **ARTICLE I**
13                    **DISCLOSURE STATEMENT**

14        The Debtor has filed a Disclosure Statement pursuant to 11 U.S.C. § 1125 and
15    Bankruptcy Rule 3016(c) (the "Disclosure Statement") in support of this Plan.  The
     Disclosure Statement was approved by the Bankruptcy Court on March__, 2021.  The
16    Disclosure Statement provides information that the Bankruptcy Court has determined to
     be adequate to enable Holders of Claims and/or Equity Interests to make informed
17    judgments about the Plan including, among other things: (a) a discussion of the Debtor's
     history, business, results of past operations, and projections regarding future operations;
18    (b) a summary of significant events that have occurred to date in the Bankruptcy Case;
     (c) a description of the means for implementation of the Plan; (d) a "liquidation analysis"
19    which provides the Debtor's realistic projection regarding what Holders of Claims and/or
     Equity Interests might receive if the case were converted to a liquidating, Chapter 7 case,
20    and (e), a summary of the procedures for voting on the Plan.

21        PLEASE READ THE DISCLOSURE STATEMENT WITH CARE.  UNLESS
22    OTHERWISE PROVIDED, ALL STATEMENTS IN THE PLAN AND DISCLOSURE
     STATEMENT CONCERNING THE HISTORY OF THE DEBTOR'S BUSINESS, THE
23    PAST OR PRESENT FINANCIAL CONDITION OF THE DEBTOR, THE EXPECTED
     RESULTS OF FUTURE OPERATIONS, THE PROJECTED RESULTS OF A CHAPTER
24    7 LIQUIDATION, TRANSACTIONS TO WHICH THE DEBTOR WAS OR IS A PARTY,

25    _____

26    [1] The last four digits of the Debtor's federal tax identification number are 3465. The
     mailing address for the Debtor is 1434 Spruce Street, Suite 100, Boulder, Colorado
27    80302.

28

OR THE EFFECT OF CONFIRMATION OF THE PLAN UPON HOLDERS OF CLAIMS AGAINST OR EQUITY INTERESTS IN THE ESTATE ARE ATTRIBUTABLE EXCLUSIVELY TO THE DEBTOR AND NOT TO ANY OTHER PARTY.

PURSUANT TO SECTION 1125 OF THE BANKRUPTCY CODE, NOTHING CONTAINED IN THE PLAN SHALL BE CONSTRUED AS CONSTITUTING A SOLICITATION OF ACCEPTANCES OF THE PLAN UNTIL SUCH TIME AS THE DISCLOSURE STATEMENT HAS BEEN APPROVED BY THE UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE.

**ARTICLE II**
**DEFINITION OF TERMS**

**A.    Definitions**

For purposes of this Plan, and except as expressly provided herein or unless the context otherwise requires, all capitalized terms that are not otherwise defined herein shall have the meanings ascribed to them in this Article II.  Any term used in this Plan that is not defined herein, but is defined in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning ascribed to that term in the Bankruptcy Code or the Bankruptcy Rules.  When used in this Plan, the following terms, when they are capitalized as set forth below, shall have the meanings that are specified below, unless the Plan otherwise indicates or unless the context otherwise requires.

1.    Administrative Expense Claim.  A Claim that, if allowed, would be entitled to priority under section 503(b) of the Bankruptcy Code, including but not necessarily limited to (a) a Claim that is incurred by the Debtor on or after the Petition Date; (b) a Claim of a Professional Person that arises under sections 330 and 331 of the Bankruptcy Code and Bankruptcy Rule 2016; and (c) any and all fees and charges that are assessed against the Estate under 28 U.S.C. § 1930.

2.    Administrative Expense Claims Bar Date.  The deadline for the filing by any Creditor, professional person that has been employed pursuant to an order of the Bankruptcy Court, or other party in interest of an application, motion or other request for allowance of an Administrative Expense Claim.

3.    Allowed Administrative Expense Claim.  An Administrative Expense Claim as to which no objection has been filed or, if an objection has been filed, has been resolved by the allowance of such Administrative Expense Claim in a specified amount by a Final Order of the Bankruptcy Court.

4.    Allowed Claim.  A Claim

(a)    for which a proof of claim has been timely filed and as to which no objection has been made in a timely fashion;

(b)    that has been listed by the Debtor in its Schedules and that has not

-2-

17616323.1

DOCS_DE:234960.1 80693/001

been described as disputed, contingent, or unliquidated;

(c)    that has been listed and described in the Schedules as disputed, contingent, or unliquidated, but only to the extent that the validity, amount, and classification of the Claim has been approved by Final Order of the Bankruptcy Court; or

(d)    that is presently or later becomes subject to an objection, and is subsequently allowed, but only in such amount and subject to such properties and/or characteristics as are determined and allowed by a Final Order of the Bankruptcy Court.

5.    <u>Bankruptcy Code</u>.  Title 11 of the United States Code, 11 U.S.C. § 101, *et seq.*, as it is in effect upon the Petition Date, together with all amendments thereto that are applicable to this Chapter 11 Case.

6.    <u>Bankruptcy Court or Court</u>.  The United States Bankruptcy Court for the District of Delaware, having jurisdiction over this Chapter 11 Case and, if the reference of this case is withdrawn or if the venue of this case is transferred, the United States District Court for the District of Delaware or such other court of competent jurisdiction that subsequently exercises jurisdiction over this Chapter 11 Case.

7.    <u>Bankruptcy Rules</u>.  The Federal Rules of Bankruptcy Procedure and the local rules of the Bankruptcy Court that are in effect on the Petition Date, together with all amendments thereto that are applicable to the Chapter 11 Case.

8.    <u>Bar Date</u>.  The deadline established by the Bankruptcy Court for the filing of Proofs of Claim, but not any other deadline or deadlines established by a Bankruptcy Court order for the filing of Administrative Expense Claims, Claims asserted by governmental units, and/or Claims arising from the rejection of executory contracts or unexpired leases.

9.    <u>Bondholders</u>.  Norgine Ventures Fund I S.C.A. SICAR and Harbert European Specialty Lending Company II, S.A.R.L.

10.    <u>Business Day</u>.  Any day, except a Saturday, a Sunday, or a "legal holiday," as defined in Bankruptcy Rule 9006(a).

11.    <u>Chapter 11 Case</u>.  The Chapter 11 Case that is presently pending in the Bankruptcy Court that was commenced by the Debtor in the United States Bankruptcy Court for the District of Delaware on the Petition Date and is designated as Case No. 20-10332-JTD.

12.    <u>Claim(s)</u>.  Any claim, as defined in section 101(5) of the Bankruptcy Code.

13.    <u>Claim Objection Deadline</u>.  The deadline by which the Debtor or Reorganized Debtor must file objections to Claims, as established by Article V.A. of the Plan.

17616323.1

DOCS_DE:234960.1 80693/001

14.     Class.  A class of Claims or Equity Interests.

15.     Confirmation.  The entry of the Confirmation Order by the Bankruptcy Court.

16.     Confirmation Hearing.  The duly noticed hearing that is conducted by the Bankruptcy Court to consider the entry of an order confirming this Plan pursuant to section 1128 of the Bankruptcy Code.

17.     Confirmation Order.  The order that is entered by the Bankruptcy Court confirming the Plan.

18.     Creditor.  The Holder of a Claim, within the meaning of section 101(10) of the Bankruptcy Code.

19.     Debtor.  SpineGuard, Inc., a Delaware corporation, whether acting as the debtor-in-possession or as the Reorganized Debtor.

20.     Disputed Claim.  A Claim that is represented by a proof of claim as to which an objection has been filed by any party in interest, or a Claim that is described in the Schedules as disputed, unliquidated, and/or contingent.

21.     Effective Date.  The first Business Day following the date upon which the Confirmation Order is entered.

22.     Equity Interest Holder.  SpineGuard, S.A., a publicly-traded joint stock company that is based in, and was formed under the laws of, the nation of France.

23.     Equity Interests.  The ownership interests in the Debtor.

24.     Estate.  The estate that was created upon the commencement of the Chapter 11 Case pursuant to section 541 of the Bankruptcy Code.

25.     Estate Property.  All property interests of the Estate, real or personal, tangible or intangible, wherever held.

26.     Final Order.  Any order that, by virtue of the passage of time or the resolution of an appeal, is no longer subject to appeal.

27.     General Unsecured Claim.  Any Claim against the Debtor that is not an Administrative Expense Claim, a Secured Claim, or any claim that is entitled to priority under section 507 of the Bankruptcy Code.

28.     General Unsecured Creditor.  Any Holder of a General Unsecured Claim against the Debtor.

29.     Holder.  A Person that holds a Claim against or Equity Interest in the Debtor.

-4-

17616323.1

30.    <u>Official Mailing List</u>.  The official listing of creditor identities and mailing addresses.

31.    <u>Person</u>.  An individual, corporation, limited liability company, partnership, association, joint venture, estate, trust, unincorporated organization, governmental unit or any subdivision thereof or any other entity.

32.    <u>Petition Date</u>.  February 13, 2020, the date upon which the Debtor commenced the Chapter 11 Case.

33.    <u>Plan</u>.  This plan of reorganization, as it may be further amended, supplemented or modified from time to time, including all exhibits and schedules annexed hereto or referenced herein, through the filing of an amended plan by the Debtor or pursuant to an order of the Bankruptcy Court.

34.    <u>Priority Tax Claim</u>.  Any Claim of a governmental unit which is entitled to priority under section 507(a)(8) of the Bankruptcy Code.

35.    <u>Professional Person</u>.  Any and all Persons that have been employed in the Chapter 11 Case and/or that are to be compensated or reimbursed pursuant to any of sections 326, 327, 328, 330 or 1103 of the Bankruptcy Code.

36.    <u>Reorganized Debtor</u>.  Following the Effective Date, the Debtor as reorganized pursuant to the Plan.

37.    <u>Reorganized Debtor's Property</u>:  All property of the Reorganized Debtor.

38.    <u>Schedules</u>.  The schedules, statement of financial affairs and any amendments thereto filed by the Debtor on and after the Petition Date pursuant to section 521 of the Bankruptcy Code.

39.    <u>Secured Claim</u>.  A Claim that is secured by a duly-perfected mortgage, security interest, or lien in or against property of the Debtor and that is quantified in accordance with section 506(a) of the Bankruptcy Code.

40.    <u>Secured Lender</u>.  The Bondholders.

41.    <u>SpineGuard</u>.  SpineGuard, Inc.

**B.    <u>Rules of Interpretation</u>**

The rules of construction and definitions set forth in sections 101 and 102 of the Bankruptcy Code shall apply to the Plan unless otherwise expressly provided herein.

17616323.1

DOCS_DE:234960.1 80693/001

**ARTICLE III**
**CLASSIFICATION OF CLAIMS AND INTERESTS**

Pursuant to this Plan and in accordance with section 1123(a)(1) of the Bankruptcy Code, all Claims of Creditors and all Equity Interests are placed in the following Classes:

Unclassified Claims.  Administrative Expense Claims and Priority Tax Claims.

Class 1.  The Secured Claims of the Bondholders.

Class 2.  General Unsecured Claims.

Class 3.  The Equity Interest of the Equity Interest Holder.

**ARTICLE IV**
**TREATMENT OF UNCLASSIFIED CLAIMS AND CLASSES OF CLAIMS AND EQUITY INTERESTS UNDER THE PLAN**

**A.    Unclassified Claims**

1.    Administrative Expense Claims.  Pursuant to section 1129(a)(9)(A) of the Bankruptcy Code, each Allowed Administrative Expense Claim, with the exception of each Administrative Expense Claim of a Professional Person, shall be paid in full on or before the Effective Date or pursuant to terms that are otherwise agreed to by the Debtor and the Holder of the subject Claim.  Each Administrative Expense Claim of a Professional Person shall be paid in full within fourteen (14) days after the entry of a Final Order by the Bankruptcy Court allowing the application for compensation and reimbursement of such Professional Person or pursuant to terms that are otherwise agreed to by the Reorganized Debtor and the Holder of such Claim.

2.    Priority Tax Claims.  Pursuant to section 1129(a)(9)(C) of the Bankruptcy Code, each Allowed Priority Tax Claim shall be paid in full on or before the Effective Date or pursuant to terms that are otherwise agreed to by the Debtor and the Holder of such Claim.

**B.    Classified Claims and Equity Interests**

1.    Class 1.  The Secured Claims of the Bondholders.

The Secured Claims of the Bondholders is impaired under the Plan.  This Claim will be paid in full, together with interest at the non-default, contract rate, in accordance with the amortization schedule that is attached hereto as **Exhibit A.**

2.    Class 2.  General Unsecured Claims.

These Claims are not impaired under the Plan.  They will be paid in full on the

-6-

17616323.1

DOCS_DE:234960.1 80693/001

Effective Date.

3.    Class 10.  The Equity Interests of the Equity Interest Holder.

These interests are not impaired under the Plan.

## C.    Impairment of Classes

Pursuant to section 1129(a)(10) of the Bankruptcy Code, if a Class of Claims is impaired under the Plan, at least one Class of Claims that is impaired under the Plan must accept the Plan, without considering the votes of "Insiders" within the meaning of the Bankruptcy Code.  A Claim or Equity Interest is "impaired" under the Plan if the legal, equitable, or contractual rights of the Holder of such Claim or Equity Interest is altered under the Plan.  The term "unimpaired" refers to Classes of Creditors or Holders of Equity Interests whose legal, equitable, and contractual rights remain unaltered by the Plan. Because of the treatment afforded to such Classes, they are deemed to have accepted the Plan.  It is not necessary to solicit acceptances from the Holders of Claims or Equity Interests in unimpaired Classes.

Class 1 is impaired under the Plan.  The Holders of Claims in Class 1 shall be entitled to vote separately to accept or reject the Plan.  As an impaired Class of Claims, Class 1 shall have accepted the Plan if (a) the Holders of at least two-thirds in dollar amount of the Allowed Claims actually voting in such Class have voted to accept the Plan and (b) the Holders of more than one-half in number of the Allowed Claims actually voting in such Class have voted to accept the Plan.

## ARTICLE V
## CLAIMS OBJECTIONS AND TREATMENT OF DISPUTED CLAIMS

## A.    Administration of Claims

The Reorganized Debtor shall object to, and shall assume any pending objection filed by the Debtor to, the allowance of Claims filed with the Bankruptcy Court with respect to which the Reorganized Debtor disputes liability, priority or amount.  All objections, affirmative defenses and counterclaims shall be litigated to Final Order; *provided, however*, the Debtor or Reorganized Debtor may settle or compromise any controversies regarding any Claim without notice or further order of the Court so long as the Reorganized Debtor complies with the provisions of Article V.D.  Pursuant to section 502(d) of the Bankruptcy Code, any Claims held by any Persons from which property is recoverable under sections 542, 543, 550 or 553 of the Bankruptcy Code, or that are transferees of transfers that are avoidable under sections 544, 545, 547, 548 or 549 of the Bankruptcy Code, are deemed disallowed and the Holders thereof may not vote to accept or to reject the Plan unless such Persons have paid the amount, or turned over any such property, for which such Persons are liable under section 542, 550 or 553 of the Bankruptcy Code.  Unless otherwise ordered by the Bankruptcy Court, to the extent not already objected to by the Debtor, the Reorganized Debtor shall file and serve all objections to Claims as soon as practicable, but, in each instance, not later than one

hundred eighty (180) days following the Effective Date or such later date as may be approved by the Bankruptcy Court.

**B.**     **Claims Assigned to Reorganized Debtor**

On the Effective Date, the Debtor shall be deemed to have assigned to the Reorganized Debtor, and the Reorganized Debtor shall be deemed to have acquired and become the successor to, all causes of action, claims, lawsuits, defenses, counterclaims and setoffs, whether equitable or legal, available to the Debtor as of the Effective Date, including all claims of the Debtor for relief against any other Person existing as of the Effective Date. Any objection to Claims must be filed and served in accordance with Bankruptcy Rule 3007.

**C.**     **Estimation of Claims**

On and after the Effective Date, and unless otherwise limited by an order of the Bankruptcy Court, the Reorganized Debtor may at any time request the Bankruptcy Court to estimate for final distribution purposes any contingent or unliquidated Claim or any Disputed Claim pursuant to section 502(c) of the Bankruptcy Code regardless of whether the Debtor previously objected to or sought to estimate such Claim, and the Bankruptcy Court will retain jurisdiction to consider any request to estimate any Claim at any time during litigation concerning any objection to any Claim, including, without limitation, during the pendency of any appeal relating to any such objection.

**D.**     **No Distribution on Disputed Claims**

Notwithstanding any provision of the Plan specifying the time for payment of distributions to Holders of Allowed Claims, no payment, dividend, or distribution shall be made to the Holder of any Disputed Claim until the time such Claim has been determined to be an Allowed Claim. Notwithstanding the existence of a Disputed Claim in a Class to which a distribution under this Plan is due, the distribution to holders of Allowed Claims in such Class shall not be affected by any delay in the resolution of the Disputed Claim. Upon the allowance of any Disputed Claim, the Holder shall be paid the amount that such Holder would have received had its Claim been an Allowed Claim on the Effective Date.

**ARTICLE VI**
**EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

**A.**     **Assumption of Executory Contracts and Unexpired Leases**

Except for any unexpired leases or executory contracts that the Debtor rejects or designates as being subject to rejection, pursuant to sections 365 and 1123(b) of the Bankruptcy Code, all executory contracts and unexpired leases that existed between the Debtor and another Person as of the Petition Date, including any that are the subject of one or more pending, unresolved motions to assume, *and not including any executory contracts and/or unexpired leases that have previously been assumed or rejected pursuant to a Final Order of the Bankruptcy Court,* shall be deemed assumed by the

-8-

17616323.1

DOCS_DE:234960.1 80693/001

Debtor upon entry of the Confirmation Order. The Plan shall constitute a motion to assume such executory contracts and unexpired leases, and the Debtor shall not be subject to any liabilities under such contracts or leases except as provided in the Plan. Subject to the occurrence of the Effective Date, entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of such assumptions pursuant to section 365(a) of the Bankruptcy Code and a finding by the Bankruptcy Court that each such assumption is in the best interests of the Debtor and the Estate.  With respect to each such executory contract or unexpired lease assumed by the Debtor, unless otherwise determined by the Bankruptcy Court pursuant to a Final Order or agreed to by the parties thereto on or before the Effective Date, any defaults of the Debtor with respect to such assumed executory contracts or leases existing as of the Effective Date shall be cured in the ordinary course of the Reorganized Debtor's business promptly after any such default becomes known to the Reorganized Debtor and, if disputed, established pursuant to applicable law by the Bankruptcy Court, and the assumed executory contracts or leases shall be binding upon and enforceable upon the parties thereto.  Subject to the occurrence of the Effective Date, upon payment of such cure amount, all defaults of the Debtor existing as of the Confirmation Date with respect to such executory contract or unexpired lease shall be deemed cured.

**B.**     **Rejection**

No later than ten (10) days prior to the commencement of the Confirmation Hearing, the Debtor shall file a notice (the "Rejection Notice") with the Bankruptcy Court of any executory contracts or unexpired leases that the Debtor seeks to reject. The Plan shall constitute a motion to reject such executory contracts and unexpired leases that are listed on the Rejection Notice, and entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of such rejection pursuant to section 365 of the Bankruptcy Code and a finding by the Bankruptcy Court that each such rejection is in the best interests of the Debtor, the Estate and all parties in interest in the Chapter 11 Case.

**C.**     **Damages Upon Rejection**

The Bankruptcy Court shall determine the dollar amount, if any, of the Claim of any Person seeking damages by reason of the rejection of any executory contract or unexpired lease; *provided, however*, that such Person must file a proof of claim with the Bankruptcy Court on or before thirty (30) calendar days following the date of entry of the Confirmation Order.  To the extent that any such Claim is an Allowed Claim by a Final Order of the Bankruptcy Court, such Claim shall become, and shall be treated for all purposes under the Plan as a Class 2 General Unsecured Claim, and the Holder thereof shall receive distributions as a Holder of an Allowed Claim in such Class pursuant to the Plan.

**ARTICLE VII**
**MEANS FOR IMPLEMENTATION OF PLAN**

**A.**     **Reorganized Debtor and Distributions**

-9-

17616323.1

DOCS_DE:234960.1 80693/001

Except as otherwise set forth in and not otherwise inconsistent with the Plan, from and after the Effective Date, the Reorganized Debtor shall maintain and continue the Debtor's operations in the ordinary course of business and implement the terms and conditions of this Plan.  On the Effective Date, as on the Petition Date, the Equity Interest Holder shall own 100% of the equity interests in the Reorganized Debtor.  All matters provided for under the Plan involving the corporate structure of the Debtor or the Reorganized Debtor, or any corporate action to be taken by, or required of the Debtor or the Reorganized Debtor shall be deemed to have occurred and be effective as provided herein, and shall be authorized and approved in all respects without any requirement for further action by the Equity Interest Holder; _provided, however_, nothing herein shall preclude the Reorganized Debtor from taking such lawful actions as it deems necessary and/or appropriate or desirable to modify its corporate organization and structure and/or provisions or documents relating to corporate governance.  On the Effective Date, the Reorganized Debtor will continue to be managed by the existing managers, officers and directors of the Debtor; _provided, however_, nothing herein shall be deemed to delay or impair the Reorganized Debtor from making such management and board changes as it deems prudent.

The Reorganized Debtor shall be responsible for any and all payments and distributions made under the Plan from its ordinary course business operations.  On and after the Effective Date, the Reorganized Debtor shall take all reasonable actions necessary to consummate and implement the transactions provided for in this Plan and the appropriate officers of the Reorganized Debtor are authorized to execute, deliver and consummate the transactions contemplated in this Plan without further notice to or order of the Bankruptcy Court.

**B.**     **Conditions Precedent, Concurrent, and Subsequent to Confirmation of the Plan**

Prior to, or concurrently with, the Confirmation of the Plan, the Bankruptcy Court shall have made such findings and determinations regarding the Plan as shall enable the entry of the Confirmation Order in a manner consistent with the provisions of the Plan.

**ARTICLE VIII**
**MODIFICATION OF THE PLAN**

Pursuant to the provisions of section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, the Debtor reserves the right to modify or alter the provisions of the Plan at any time prior to or subsequent to Confirmation, subject to the provisions of Bankruptcy Code and the Bankruptcy Rules.  If the Debtor revokes or withdraws the Plan, or if Confirmation of the Plan does not occur, then the Plan shall be deemed null and void in all respects and nothing contained in the Plan shall be deemed to prejudice in any manner the rights of the Debtor in any further case and/or proceeding involving the Debtor.

17616323.1

DOCS_DE:234960.1 80693/001

## ARTICLE IX
## RETENTION OF JURISDICTION BY THE BANKRUPTCY COURT

Notwithstanding Confirmation, until the entry of a final decree, the Bankruptcy Court shall retain jurisdiction to ensure that the purposes and intent of the Plan are carried out.  Without limiting the generality of the foregoing, the Bankruptcy Court shall retain jurisdiction for the following purposes:

(i)      fixing and allowing any Claim, including any Administrative Expense Claim, as a cost and expense of the administration of the Chapter 11 Case, reconsidering any Claim that has been deemed an Allowed Claim, and hearing and determining any objection to a Claim (the failure of the Debtor to object to, or to examine any Claim for the purpose of voting, shall not be deemed to be a waiver of the Debtor's right to object to, or re-examine any Claim in whole or in part);

(ii)      hearing and determining any action brought by the Debtor with respect to a transfer that is avoidable pursuant to applicable law;

(iii)      hearing and determining all causes of action, controversies, disputes, or conflicts between or among the Debtor and any other Person, including those that were pending prior to Confirmation;

(iv)      correcting any defect, curing any omission, or reconciling any inconsistency in the Plan or Confirmation Order as may be necessary to carry out the purpose and intent of the Plan;

(v)      hearing and determining any action brought by the Debtor to protect the Debtor from actions of Creditors, or other parties in interest;

(vi)      issuing any order necessary to enforce and implement the Plan or Confirmation Order, including without limitation, such declaratory and injunctive orders as are appropriate to protect the Debtor or Reorganized Debtor from actions of Creditors or other parties in interest;

(vii)      hearing and determining any dispute relating to the terms or implementation of the Plan or Confirmation Order, or to the rights or obligations of any parties in interest with respect thereto;

(viii)      modifying the Plan after Confirmation pursuant to the Bankruptcy Rules and the Bankruptcy Code;

(ix)      hearing and determining all applications for compensation of Professional Persons and reimbursement of expenses under sections 330, 331, or 503(b) of the Bankruptcy Code;

(x)      hearing and determining any and all disputes pending as of Confirmation for the rejection, assumption, or assignment of executory contracts or

-11-

17616323.1

DOCS_DE:234960.1 80693/001

unexpired leases and the allowance of any Claim resulting therefrom; and

(xi)     hearing and determining such other matters and for such other purposes as may be provided in the Confirmation Order.

## ARTICLE X
## MISCELLANEOUS PROVISIONS

### A.    <u>Vesting of Assets</u>

Upon the Effective Date, all assets of the Debtor shall be vested in the Reorganized Debtor in accordance with section 1141 of the Bankruptcy Code, and no further order of the Court shall be necessary for the Reorganized Debtor to perform such acts as are within the ordinary scope of its business and/or necessary to carry out the purposes or intent of this Plan.

### B.    <u>Unmarked Ballots</u>

Executed ballots respecting the Plan returned by Creditors to the Debtor that do not indicate acceptance or rejection of the Plan shall not be deemed and counted as acceptance of the Plan.

### C.    <u>Mailing List; Returned Distribution Checks</u>

After the Effective Date, the Official Mailing List shall be maintained by the Reorganized Debtor. It shall be the obligation of each Creditor and/or party in interest to assure that the Official Mailing List is current and accurate as to each such Person by notifying the Reorganized Debtor promptly of any change of address. In the event that a distribution check, that has been properly posted to the Creditor's address as set forth in the Official Mailing List, is returned as undeliverable by the United States Postal Service, or is not cashed within six months following the date of issuance, the Reorganized Debtor shall be authorized, but not required, to avoid such check with the applicable funds becoming subject to further distribution pursuant to this Plan, and the Claim of such creditor being deemed satisfied in full.

### D.    <u>Preservation of Claims and Defenses</u>

Unless otherwise expressly set forth in the Plan or Confirmation Order, the Reorganized Debtor shall retain all rights to commence, pursue, or assert, as appropriate, any and all Claims, rights, demands, causes of action, or defenses by or on behalf of the Estate, whether arising before or after the Petition Date, in any court or other tribunal including, without limitation, in any adversary proceeding filed in the Chapter 11 Case.  Except as settled and released herein, from and after the Effective Date, the Reorganized Debtor shall have the exclusive right and power to litigate any Claim or cause of action that constituted an asset of the Debtor, including, without limitation, any avoidance or recovery action under section 541, 542, 544, 545, 547, 548, 549, 550, 551, or 553 of the Bankruptcy Code and any other cause of action, right to

-12-

17616323.1

DOCS_DE:234960.1 80693/001

payment, or claim that may be pending on the Effective Date or instituted by the Debtor or Reorganized Debtor thereafter, to a Final Order.

Subject to the limitations provided in section 553 of the Bankruptcy Code, the Debtor or the Reorganized Debtor, as applicable, may, but will not be required to, setoff against any Claim and the payments or other distributions to be made pursuant to the Plan in respect of such Claim, Claims of any nature whatsoever the Debtor may have against the Holder of such Claim, but neither the failure to do so nor the allowance of any Claim will constitute a waiver or release by the Debtor or the Reorganized Debtor, as applicable, of any such Claim, right, or defense that the Debtor may have against such Holder.

## E.    <u>Administrative Expense Claims</u>

The Administrative Expense Claims Bar Date, which shall not apply to applications for the allowance of compensation and reimbursement of expenses under Section F of this Article, shall be forty-two (42) days after the Effective Date, unless the Bankruptcy Court enters an order establishing a different date. Objections to any request for allowance of an Administrative Expense Claim shall be filed and served on the respective applicant and its counsel no later than thirty (30) days after the Administrative Expense Claims Bar Date.

## F.    <u>Applications for Allowance of Compensation and Reimbursement of Expenses</u>

All final applications for allowance of compensation and reimbursement of expenses pursuant to sections 327, 328, 330, 331, 503(b) or 1103 of the Bankruptcy Code for services rendered to the Debtor prior to the Effective Date must be filed and served on the Reorganized Debtor, its counsel, and Office of the United States Trustee within forty-five (45) days following the Effective Date, unless otherwise ordered by the Bankruptcy Court.  Objections to any applications of such Professional Persons or other Persons for allowance of compensation and/or reimbursement of expenses must be filed and served on the respective applicant and its counsel no later than the first Business Day following twenty-one (21) days (or such other period as may be allowed by order of the Bankruptcy Court) after the date on which the applicable application for compensation or reimbursement was received.  The Reorganized Debtor may pay charges that they incur on and after the Effective Date for Professional Persons' fees, disbursements, expenses or related support services without application to the Bankruptcy Court.

## G.    <u>Employment of Professional Persons</u>

The Reorganized Debtor shall be authorized to employ and compensate Professional Persons following Confirmation upon such terms as the Reorganized Debtor deems reasonable and appropriate without further notice or order of the Court.

## H.    <u>Timely Payments</u>

-13-

17616323.1

DOCS_DE:234960.1 80693/001

The Reorganized Debtor shall make all payments required under the Plan and applicable law on a timely basis.

**I.    Stay of Confirmation Order Shall Not Apply**

The stay of enforceability of Confirmation Order pursuant to Bankruptcy Rule 3020(e) shall not apply, and the order of Confirmation shall be enforceable according to its terms absent further order of the Court.

**J.    Discharge and Injunction**

Except as specifically provided in the Plan and/or the Confirmation Order, as of the Effective Date, Confirmation shall discharge the Debtor and the Reorganized Debtor pursuant to section 1141(d)(1)(A) of the Bankruptcy Code from any and all Claims of any nature whatsoever, including any Claims and liabilities that arose prior to Confirmation, and all debts of the kind specified in sections 502(g), 502(h) or 502(i) of the Bankruptcy Code, whether or not (a) a Proof of Claim based on such Claim was filed or deemed filed under section 501 of the Bankruptcy Code, or such Claim was listed on the Schedules of the Debtor, (b) such Claim is or was an Allowed Claim under section 502 of the Bankruptcy Code, or (c) the Holder of such Claim has voted on or accepted the Plan. Except as provided for in the Plan and/or the Confirmation Order, the rights that are provided in the Plan as of the Effective Date shall be in exchange for and in complete satisfaction, settlement and discharge of all Claims against, liens on, and interests in the Debtor or the Reorganized Debtor or any Estate Property.

From and after the Effective Date, and except as otherwise provided for in the Plan, all Persons who have held, hold or may hold Claims, liens or interests against or in the Debtor are (i) permanently enjoined from commencing, conducting or continuing in any manner, directly or indirectly, any lawsuit, action or other proceeding of any kind against or affecting the Debtor; (ii) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order; (iii) creating, perfecting or enforcing any lien or encumbrance against the Debtor or any property of the Debtor; (iv) asserting, maintaining or failing to withdraw any right of setoff, subordination, or recoupment of any kind, directly or indirectly, against any obligation due the Debtor, or any of the Debtor's property; and (v) taking any action in any place and in any manner whatsoever that does not conform to or comply with the provisions of the Plan.  By accepting distributions pursuant to this Plan, each Holder of an Allowed Claim will be deemed to have specifically consented to the injunctions provide for herein.

**K.    Exculpation and Release**

As of the Effective Date, the Debtor and its respective present or former shareholders, officers, directors, affiliates, employees, accountants, advisors, attorneys, consultants, and experts or other agents shall not have or incur any liability to any Person for any act or omission taken on or after the Petition Date in connection with or arising out of the Chapter 11 Case, negotiation of the Plan or other related document, the attempt to obtain a Confirmation Order, the consummation of the Plan, the administration of the

-14-

17616323.1

DOCS_DE:234960.1 80693/001

Plan or the property to be distributed under the Plan. The Debtor shall be entitled to rely upon the advice of counsel with respect to its duties and responsibilities under the Plan and any related document. In no event shall any party exculpated from liability under this section be exculpated from liability in the case of gross negligence, fraud, breach of fiduciary duty, or willful misconduct.

Pursuant to section 1125(e) of the Bankruptcy Code, the Confirmation Order will provide that all of the Persons who have solicited acceptances or rejections of the Plan (including, the Debtor, its respective present or former officers, employees, accountants, advisors, attorneys, consultants, experts or other agents) have acted in good faith and in compliance with the applicable provisions of the Bankruptcy Code, and are not liable on account of such solicitation or participation or for violations of any applicable law, rule or regulation governing the solicitation of acceptances or rejections of the Plan.

**L.      Modification of Payment Terms**

The Debtor reserves the right to modify the treatment of any Allowed Claim, as provided in section 1123(a)(4) of the Bankruptcy Code, at any time after the Effective Date, upon the consent of the Holder of such Allowed Claim.

**M.      Notices**

An event of default shall occur if the Reorganized Debtor shall fail to comply with a material provision of this Plan. In such an event, the party alleging such default shall provide written notice of the alleged default to the Reorganized Debtor and the attorneys for the Reorganized Debtor served either by: (a) certified mail, return receipt requested, (b) hand delivery, or (c) reputable overnight courier service, to the following addresses:

Reorganized Debtor
c/o Laury Croter
Chief Financial Officer
SpineGuard, Inc.
1434 Spruce Street, Suite 100
Boulder, CO  80302

With a copy to:
Neal L. Wolf, Esq.
HANSON BRIDGETT LLP
425 Market Street, 26th Floor
San Francisco, CA 94105

If, after thirty (30) days following the Reorganized Debtor's and its counsel's receipt of the written notice of default, the Reorganized Debtor and such party have been unable to resolve, or the Reorganized Debtor has been unable to cure, the asserted default, such party may proceed with any remedies available to it under applicable law, provided that nothing herein shall limit or affect the Reorganized Debtor's right to seek appropriate relief from any court of competent jurisdiction, including the Bankruptcy

-15-

1  Court.

2  **N.    Binding Effect**

3  
4  This Plan shall be binding upon, and shall inure to the benefit of the Debtor, the Reorganized Debtor and the Holders of all Claims and Equity Interests and their respective heirs, successors and assigns

5  **O.    Governing Law**

6  
7  Except to the extent that the Bankruptcy Code or other federal law is applicable or as provided in any contract, instrument, release or other agreement entered into in connection with this Plan, the rights, duties and obligations of the Debtor, Reorganized

8  Debtor, and any other Person arising under this Plan shall be governed by, and construed and enforced in accordance with, the internal laws of the State of Delaware

9  without giving effect to Delaware choice of law provisions.

10  **P.    Severability**

11  
12  If, prior to Confirmation of the Plan, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court, at the Debtor's request, shall have the power to alter or interpret such term or provision to make

13  it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term

14  or provision shall then be applicable as altered or interpreted.  Notwithstanding any such

15  holding, alteration or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect.

16  
17  **Q.    Quarterly Fess to the United States Trustee**

18  Operating reports will be filed and quarterly fees payable to the Office of the United States Trustee will be paid on a current basis prior to Confirmation.  Post-

19  confirmation quarterly operating reports will be filed in accordance with the applicable provisions of the Bankruptcy Code and Bankruptcy Rules.

20  
21  **R.    No Admissions**

22  The Plan provides for the resolution, settlement and compromise of Claims against the Debtor and nothing contained herein shall be construed to be an admission of any

23  fact or otherwise binding upon the Debtor in any manner prior to the Effective Date.

24  **S.    Headings**

25  The headings used in the Plan are for convenience and reference only and shall

26  not constitute a part of the Plan for any other purpose or in any manner affect the construction of the provisions of the Plan.

27  **T.    Entire Agreement**

-16-

28

17616323.1

DOCS_DE:234960.1 80693/001

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

The Plan sets forth the entire agreement and undertakings relating to the subject matter hereof and supersedes all prior discussions and documents.  No person or entity shall be bound by any terms, conditions, definitions, warranties or representations with respect to the subject matter hereof, other than expressly provided for herein or as may hereafter be agreed to by such person or entity in writing.

DATED:  June 17, 2021                                        Respectfully submitted,

PACHULSKI STANG ZIEHL & JONES LLP

By:    /s/ Mary F. Caloway
_____
Mary F. Caloway (No. 3059)
919 North Market Street, 17th Floor
Wilmington, Delaware 19801
Telephone: (302) 778-6464
Facsimile: (302) 652-4400
Email: mcaloway@pszjlawThat.com

-and-

HANSON BRIDGETT LLP

By:/s/ Neal Wolf
_____
Neal Wolf (admitted pro hac vice)
Anthony Dutra (admitted pro hac vice)
425 Market Street, 26th Floor
San Francisco, CA  94105
Telephone:  (415) 777-3200
Facsimile:  (415) 541-9366
Email: nwolf@hansonbridgett.com
            adutra@hansonbridgett.com
*Counsel to the Debtor and Debtor in Possession*

-17-

17616323.1

DOCS_DE:234960.1 80693/001

**Exhibit A**

| Company Name: | SpineGuard Reschedule |
|---|---|
| **Date of Funding** | 1-Feb-21 |
| **EOM of 1st Funding** | 28-Feb-21 |
| **Days in Between** | 28 |
| **Start of month of 1st Funding** | 1-Feb-21 |
| **Days in Month** | 28 |
| **Total Loan Principal including legal fees** | 4,000,000 |

| | | I/O Period | Repayment period | Total length |
|---|---|---|---|---|
| **All amounts in :** | € | | | |
| **Loan principal less legal fees** | 3,875,000 | 0 | 60.00 | 60.00 |
| | 3,875,000 | | | |
| **Legal Fees** | 125,000 | | | |
| **Cash interest Rate** | 9.95% | | | |
| **Monthly Payment** | 82,237 | | | |

| | | | | Tranche 1 | | | Legal Fees | Payment Due | Total Payments | | Total Interest Payment | Total Principal Payments | Total Exposure Outstanding |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | BB | Int | Princ | Pmt | EB | | | | | | | |
| 2/1/2021 | 0 | 0.00 | 0.00 | -3,875,000.00 | -3,875,000.00 | 3,875,000.00 | 0.00 | 2/1/2021 | -3,875,000.00 | | 0.00 | -3,875,000.00 | 3,875,000.00 |
| 2/28/2021 | 1 | 3,875,000.00 | 32,130.21 | 50,106.79 | 82,237.00 | 3,824,893.21 | 62,500.00 | 2/28/2021 | 144,737.00 | | 32,130.21 | 50,106.79 | 3,824,893.21 |
| 3/31/2021 | 2 | 3,824,893.21 | 31,714.74 | 50,522.26 | 82,237.00 | 3,774,370.95 | 62,500.00 | 3/31/2021 | 144,737.00 | | 31,714.74 | 50,522.26 | 3,774,370.95 |
| 4/30/2021 | 3 | 3,774,370.95 | 31,295.83 | 50,941.17 | 82,237.00 | 3,723,429.78 | 0.00 | 4/30/2021 | 82,237.00 | | 31,295.83 | 50,941.17 | 3,723,429.78 |
| 5/31/2021 | 4 | 3,723,429.78 | 30,873.44 | 51,363.56 | 82,237.00 | 3,672,066.22 | 0.00 | 5/31/2021 | 82,237.00 | | 30,873.44 | 51,363.56 | 3,672,066.22 |
| 6/30/2021 | 5 | 3,672,066.22 | 30,447.55 | 51,789.45 | 82,237.00 | 3,620,276.77 | 0.00 | 6/30/2021 | 82,237.00 | | 30,447.55 | 51,789.45 | 3,620,276.77 |
| 7/31/2021 | 6 | 3,620,276.77 | 30,018.13 | 52,218.87 | 82,237.00 | 3,568,057.90 | 0.00 | 7/31/2021 | 82,237.00 | | 30,018.13 | 52,218.87 | 3,568,057.90 |
| 8/31/2021 | 7 | 3,568,057.90 | 29,585.15 | 52,651.85 | 82,237.00 | 3,515,406.05 | 0.00 | 8/31/2021 | 82,237.00 | | 29,585.15 | 52,651.85 | 3,515,406.05 |
| 9/30/2021 | 8 | 3,515,406.05 | 29,148.58 | 53,088.42 | 82,237.00 | 3,462,317.63 | 0.00 | 9/30/2021 | 82,237.00 | | 29,148.58 | 53,088.42 | 3,462,317.63 |
| 10/31/2021 | 9 | 3,462,317.63 | 28,708.38 | 53,528.61 | 82,237.00 | 3,408,789.02 | 0.00 | 10/31/2021 | 82,237.00 | | 28,708.38 | 53,528.61 | 3,408,789.02 |
| 11/30/2021 | 10 | 3,408,789.02 | 28,264.54 | 53,972.46 | 82,237.00 | 3,354,816.56 | 0.00 | 11/30/2021 | 82,237.00 | | 28,264.54 | 53,972.46 | 3,354,816.56 |
| 12/31/2021 | 11 | 3,354,816.56 | 27,817.02 | 54,419.98 | 82,237.00 | 3,300,396.58 | 0.00 | 12/31/2021 | 82,237.00 | | 27,817.02 | 54,419.98 | 3,300,396.58 |
| 1/31/2022 | 12 | 3,300,396.58 | 27,365.79 | 54,871.21 | 82,237.00 | 3,245,525.37 | 0.00 | 1/31/2022 | 82,237.00 | | 27,365.79 | 54,871.21 | 3,245,525.37 |
| 2/28/2022 | 13 | 3,245,525.37 | 26,910.81 | 55,326.18 | 82,237.00 | 3,190,199.19 | 0.00 | 2/28/2022 | 82,237.00 | | 26,910.81 | 55,326.18 | 3,190,199.19 |
| 3/31/2022 | 14 | 3,190,199.19 | 26,452.07 | 55,784.93 | 82,237.00 | 3,134,414.26 | 0.00 | 3/31/2022 | 82,237.00 | | 26,452.07 | 55,784.93 | 3,134,414.26 |
| 4/30/2022 | 15 | 3,134,414.26 | 25,989.52 | 56,247.48 | 82,237.00 | 3,078,166.78 | 0.00 | 4/30/2022 | 82,237.00 | | 25,989.52 | 56,247.48 | 3,078,166.78 |
| 5/31/2022 | 16 | 3,078,166.78 | 25,523.13 | 56,713.86 | 82,237.00 | 3,021,452.92 | 0.00 | 5/31/2022 | 82,237.00 | | 25,523.13 | 56,713.86 | 3,021,452.92 |
| 6/30/2022 | 17 | 3,021,452.92 | 25,052.88 | 57,184.12 | 82,237.00 | 2,964,268.80 | 0.00 | 6/30/2022 | 82,237.00 | | 25,052.88 | 57,184.12 | 2,964,268.80 |
| 7/31/2022 | 18 | 2,964,268.80 | 24,578.73 | 57,658.27 | 82,237.00 | 2,906,610.53 | 0.00 | 7/31/2022 | 82,237.00 | | 24,578.73 | 57,658.27 | 2,906,610.53 |
| 8/31/2022 | 19 | 2,906,610.53 | 24,100.65 | 58,136.35 | 82,237.00 | 2,848,474.18 | 0.00 | 8/31/2022 | 82,237.00 | | 24,100.65 | 58,136.35 | 2,848,474.18 |
| 9/30/2022 | 20 | 2,848,474.18 | 23,618.60 | 58,618.40 | 82,237.00 | 2,789,855.78 | 0.00 | 9/30/2022 | 82,237.00 | | 23,618.60 | 58,618.40 | 2,789,855.78 |
| 10/31/2022 | 21 | 2,789,855.78 | 23,132.55 | 59,104.44 | 82,237.00 | 2,730,751.33 | 0.00 | 10/31/2022 | 82,237.00 | | 23,132.55 | 59,104.44 | 2,730,751.33 |
| 11/30/2022 | 22 | 2,730,751.33 | 22,642.48 | 59,594.52 | 82,237.00 | 2,671,156.82 | 0.00 | 11/30/2022 | 82,237.00 | | 22,642.48 | 59,594.52 | 2,671,156.82 |
| 12/31/2022 | 23 | 2,671,156.82 | 22,148.34 | 60,088.66 | 82,237.00 | 2,611,068.16 | 0.00 | 12/31/2022 | 82,237.00 | | 22,148.34 | 60,088.66 | 2,611,068.16 |
| 1/31/2023 | 24 | 2,611,068.16 | 21,650.11 | 60,586.89 | 82,237.00 | 2,550,481.27 | 0.00 | 1/31/2023 | 82,237.00 | | 21,650.11 | 60,586.89 | 2,550,481.27 |
| 2/28/2023 | 25 | 2,550,481.27 | 21,147.74 | 61,089.26 | 82,237.00 | 2,489,392.01 | 0.00 | 2/28/2023 | 82,237.00 | | 21,147.74 | 61,089.26 | 2,489,392.01 |
| 3/31/2023 | 26 | 2,489,392.01 | 20,641.21 | 61,595.79 | 82,237.00 | 2,427,796.22 | 0.00 | 3/31/2023 | 82,237.00 | | 20,641.21 | 61,595.79 | 2,427,796.22 |
| 4/30/2023 | 27 | 2,427,796.22 | 20,130.48 | 62,106.52 | 82,237.00 | 2,365,689.70 | 0.00 | 4/30/2023 | 82,237.00 | | 20,130.48 | 62,106.52 | 2,365,689.70 |
| 5/31/2023 | 28 | 2,365,689.70 | 19,615.51 | 62,621.49 | 82,237.00 | 2,303,068.22 | 0.00 | 5/31/2023 | 82,237.00 | | 19,615.51 | 62,621.49 | 2,303,068.22 |
| 6/30/2023 | 29 | 2,303,068.22 | 19,096.27 | 63,140.72 | 82,237.00 | 2,239,927.49 | 0.00 | 6/30/2023 | 82,237.00 | | 19,096.27 | 63,140.72 | 2,239,927.49 |
| 7/31/2023 | 30 | 2,239,927.49 | 18,572.73 | 63,664.27 | 82,237.00 | 2,176,263.23 | 0.00 | 7/31/2023 | 82,237.00 | | 18,572.73 | 63,664.27 | 2,176,263.23 |
| 8/31/2023 | 31 | 2,176,263.23 | 18,044.85 | 64,192.15 | 82,237.00 | 2,112,071.08 | 0.00 | 8/31/2023 | 82,237.00 | | 18,044.85 | 64,192.15 | 2,112,071.08 |
| 9/30/2023 | 32 | 2,112,071.08 | 17,512.59 | 64,724.41 | 82,237.00 | 2,047,346.67 | 0.00 | 9/30/2023 | 82,237.00 | | 17,512.59 | 64,724.41 | 2,047,346.67 |
| 10/31/2023 | 33 | 2,047,346.67 | 16,975.92 | 65,261.08 | 82,237.00 | 1,982,085.59 | 0.00 | 10/31/2023 | 82,237.00 | | 16,975.92 | 65,261.08 | 1,982,085.59 |
| 11/30/2023 | 34 | 1,982,085.59 | 16,434.79 | 65,802.20 | 82,237.00 | 1,916,283.38 | 0.00 | 11/30/2023 | 82,237.00 | | 16,434.79 | 65,802.20 | 1,916,283.38 |
| 12/31/2023 | 35 | 1,916,283.38 | 15,889.18 | 66,347.81 | 82,237.00 | 1,849,935.57 | 0.00 | 12/31/2023 | 82,237.00 | | 15,889.18 | 66,347.81 | 1,849,935.57 |
| 1/31/2024 | 36 | 1,849,935.57 | 15,339.05 | 66,897.95 | 82,237.00 | 1,783,037.62 | 0.00 | 1/31/2024 | 82,237.00 | | 15,339.05 | 66,897.95 | 1,783,037.62 |
| 2/29/2024 | 37 | 1,783,037.62 | 14,784.35 | 67,452.64 | 82,237.00 | 1,715,584.98 | 0.00 | 2/29/2024 | 82,237.00 | | 14,784.35 | 67,452.64 | 1,715,584.98 |
| 3/31/2024 | 38 | 1,715,584.98 | 14,225.06 | 68,011.94 | 82,237.00 | 1,647,573.04 | 0.00 | 3/31/2024 | 82,237.00 | | 14,225.06 | 68,011.94 | 1,647,573.04 |
| 4/30/2024 | 39 | 1,647,573.04 | 13,661.13 | 68,575.87 | 82,237.00 | 1,578,997.17 | 0.00 | 4/30/2024 | 82,237.00 | | 13,661.13 | 68,575.87 | 1,578,997.17 |
| 5/31/2024 | 40 | 1,578,997.17 | 13,092.52 | 69,144.48 | 82,237.00 | 1,509,852.69 | 0.00 | 5/31/2024 | 82,237.00 | | 13,092.52 | 69,144.48 | 1,509,852.69 |

| Company Name: | SpineGuard Reschedule |
|---|---|
| Date of Funding | 1-Feb-21 |
| EOM of 1st Funding | 28-Feb-21 |
| Days in Between | 28 |
| Start of month of 1st Funding | 1-Feb-21 |
| Days in Month | 28 |
| Total Loan Principal including legal fees | 4,000,000 |

| | | I/O Period | Repayment period | Total length |
|---|---|---|---|---|
| All amounts in : | € | 0 | 60.00 | 60.00 |
| Loan principal less legal fees | 3,875,000 | | | |
| | 3,875,000 | | | |
| Legal Fees | 125,000 | | | |
| Cash interest Rate | 9.95% | | | |
| Monthly Payment | 82,237 | | | |

| | | | Tranche 1 | | | | Legal Fees | Payment Due | Total Payments | | Total Interest Payment | Total Principal Payments | Total Exposure Outstanding |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | BB | Int | Princ | Pmt | EB | | | | | | | |
| 6/30/2024 | 41 | 1,509,852.69 | 12,519.20 | 69,717.80 | 82,237.00 | 1,440,134.88 | 0.00 | 6/30/2024 | 82,237.00 | | 12,519.20 | 69,717.80 | 1,440,134.88 |
| 7/31/2024 | 42 | 1,440,134.88 | 11,941.12 | 70,295.88 | 82,237.00 | 1,369,839.00 | 0.00 | 7/31/2024 | 82,237.00 | | 11,941.12 | 70,295.88 | 1,369,839.00 |
| 8/31/2024 | 43 | 1,369,839.00 | 11,358.25 | 70,878.75 | 82,237.00 | 1,298,960.25 | 0.00 | 8/31/2024 | 82,237.00 | | 11,358.25 | 70,878.75 | 1,298,960.25 |
| 9/30/2024 | 44 | 1,298,960.25 | 10,770.55 | 71,466.45 | 82,237.00 | 1,227,493.80 | 0.00 | 9/30/2024 | 82,237.00 | | 10,770.55 | 71,466.45 | 1,227,493.80 |
| 10/31/2024 | 45 | 1,227,493.80 | 10,177.97 | 72,059.03 | 82,237.00 | 1,155,434.77 | 0.00 | 10/31/2024 | 82,237.00 | | 10,177.97 | 72,059.03 | 1,155,434.77 |
| 11/30/2024 | 46 | 1,155,434.77 | 9,580.48 | 72,656.52 | 82,237.00 | 1,082,778.26 | 0.00 | 11/30/2024 | 82,237.00 | | 9,580.48 | 72,656.52 | 1,082,778.26 |
| 12/31/2024 | 47 | 1,082,778.26 | 8,978.04 | 73,258.96 | 82,237.00 | 1,009,519.29 | 0.00 | 12/31/2024 | 82,237.00 | | 8,978.04 | 73,258.96 | 1,009,519.29 |
| 1/31/2025 | 48 | 1,009,519.29 | 8,370.60 | 73,866.40 | 82,237.00 | 935,652.89 | 0.00 | 1/31/2025 | 82,237.00 | | 8,370.60 | 73,866.40 | 935,652.89 |
| 2/28/2025 | 49 | 935,652.89 | 7,758.12 | 74,478.88 | 82,237.00 | 861,174.02 | 0.00 | 2/28/2025 | 82,237.00 | | 7,758.12 | 74,478.88 | 861,174.02 |
| 3/31/2025 | 50 | 861,174.02 | 7,140.57 | 75,096.43 | 82,237.00 | 786,077.59 | 0.00 | 3/31/2025 | 82,237.00 | | 7,140.57 | 75,096.43 | 786,077.59 |
| 4/30/2025 | 51 | 786,077.59 | 6,517.89 | 75,719.10 | 82,237.00 | 710,358.48 | 0.00 | 4/30/2025 | 82,237.00 | | 6,517.89 | 75,719.10 | 710,358.48 |
| 5/31/2025 | 52 | 710,358.48 | 5,890.06 | 76,346.94 | 82,237.00 | 634,011.54 | 0.00 | 5/31/2025 | 82,237.00 | | 5,890.06 | 76,346.94 | 634,011.54 |
| 6/30/2025 | 53 | 634,011.54 | 5,257.01 | 76,979.99 | 82,237.00 | 557,031.56 | 0.00 | 6/30/2025 | 82,237.00 | | 5,257.01 | 76,979.99 | 557,031.56 |
| 7/31/2025 | 54 | 557,031.56 | 4,618.72 | 77,618.28 | 82,237.00 | 479,413.28 | 0.00 | 7/31/2025 | 82,237.00 | | 4,618.72 | 77,618.28 | 479,413.28 |
| 8/31/2025 | 55 | 479,413.28 | 3,975.14 | 78,261.86 | 82,237.00 | 401,151.42 | 0.00 | 8/31/2025 | 82,237.00 | | 3,975.14 | 78,261.86 | 401,151.42 |
| 9/30/2025 | 56 | 401,151.42 | 3,326.21 | 78,910.78 | 82,237.00 | 322,240.63 | 0.00 | 9/30/2025 | 82,237.00 | | 3,326.21 | 78,910.78 | 322,240.63 |
| 10/31/2025 | 57 | 322,240.63 | 2,671.91 | 79,565.09 | 82,237.00 | 242,675.55 | 0.00 | 10/31/2025 | 82,237.00 | | 2,671.91 | 79,565.09 | 242,675.55 |
| 11/30/2025 | 58 | 242,675.55 | 2,012.18 | 80,224.81 | 82,237.00 | 162,450.73 | 0.00 | 11/30/2025 | 82,237.00 | | 2,012.18 | 80,224.81 | 162,450.73 |
| 12/31/2025 | 59 | 162,450.73 | 1,346.99 | 80,890.01 | 82,237.00 | 81,560.72 | 0.00 | 12/31/2025 | 82,237.00 | | 1,346.99 | 80,890.01 | 81,560.72 |
| 1/31/2026 | 60 | 81,560.72 | 676.27 | 81,560.72 | 82,237.00 | 0.00 | 0.00 | 1/31/2026 | 82,237.00 | | 676.27 | 81,560.72 | 0.00 |